UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

NATHANIEL C. WORLEY,            )
                               )
            Movant,            )
                               )
      vs.                      )        Case No. 1:10CV00173 SNLJ
                               )
UNITED STATES OF AMERICA,       )
                               )
            Respondent.         )

## MEMORANDUM AND ORDER

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Nathaniel C. Worley, a person in federal custody.  On August 11, 2009, Worley plead guilty before this Court to the offenses of Possession of Pseudoephedrine with Intent to Manufacture Meth and being a Felon in Possession of a Firearm, and on November 2, 2009, this Court sentenced Worley to the Bureau of Prisons for a term of 180 months, a sentence within the sentencing guideline range.  Worley's § 2255 action is fully briefed and ripe for disposition.

## FACTS AND PROCEDURAL BACKGROUND

Worley was convicted after a plea of guilty in the underlying criminal case on two counts, first for Possession of Pseudoephedrine with intent to manufacture methamphetamine and secondly of being a felon in possession of a firearm. Normally the base offense level would have been determined based upon the quantity of pseudoephedrine involved in the crime, in this instance at least 10 grams but less than 40 grams for a base offense level of 26. However, due to Worley's extensive criminal history the plea agreement recognized that Worley might qualify as a career offender and/or armed career criminal but contained no agreement to that effect.

The Presentence Report recommended that Worley qualified as a career offender on the

drug count and as an armed career criminal on the gun count, based upon separate and unrelated

countable convictions for; Felony Sale of Controlled Substance (1993), Conspiracy to

manufacture Methamphetamine (1998), and Attempting to Manufacture Methamphetamine

(2000).₁ With a total of 26 criminal history points Worley was correctly categorized as a level

VI even without reference to the operation of the career offender or armed career criminal

guidelines.

Worley correctly received a three level reduction for acceptance of responsibility, and as

a result of his prior history, his total offense level was determined to be 30 on the gun count

which drove the sentencing range. Normally an offense level of 30 and a criminal history

category of VI, would result in an advisory Guidelines sentencing range of 168 to 210 months of

imprisonment. Because of the 180 month mandatory minimum sentence for ACC, the advisory

Guidelines sentencing range was set at 180 to 210 months.

Worley was sentenced to the mandatory minimum sentence of 180 months, based upon

the parties understanding at the time that he was properly classified as an armed career criminal.

## DISCUSSION

**A.      Felon in Possession Statute is a Constitutional Exercise of the Commerce Clause.**

In Ground One Worley makes a challenge to his conviction for Possession of a Firearm

by a Felon in violation of 18 U.S.C. § 922(g)(1). Worley's complaint in Ground One is largely

buried in the "legalise" of his memorandum, but fundamentally boils down to a claim that he was

not affecting interstate commerce by his possession of the gun.

> "As noted Mr. Worley was charged and stands convicted for possession of a
> firearm on private property. The question is whether such possession is a federal
> offense and whether the facts alleged and admitted or proved fall within the ambit

of the statute as enacted." (§ 2255 Memo, pp. 3-4)

Worley is both factually and legally wrong in this argument. To begin with, Worley was not in possession of the firearm in question while on private property, but while on the median of an Interstate Highway. The Written stipulation of facts that Worley agreed to as a part of his plea with the Government indicates that:

> "On February 4, 2008, a Missouri State Highway Patrol Trooper located the defendant, who was the sole occupant of a vehicle illegally parked in the median of Interstate 55, in rural Scott County, Missouri. Worley was slumped over the wheel and appeared obviously impaired to the Trooper. Worley was arrested and the vehicle was impounded. A search of the vehicle disclosed items of drug paraphernalia and a Mosin-Nagant, Model M91/30, 7.62 x 54R, bolt action rifle bearing serial number 9130056088." Plea Stip, p. 10)

During the plea colloquy, the attorney for the government read the factual basis from the plea stipulation as written into the record verbatim. (TRS, p. 10) The Court then inquired of the Petitioner as to whether those facts were correct or not.

| | |
|---|---|
| Court: | Have You heard the statements from the prosecutor? |
| Worley: | Yes. |
| Court: | Everything he said true and accurate? |
| Worley: | Yes. |
| Court: | No question about it? |
| Worley: | No question about it. |

(TRS p. 11)

Worley simply states in his motion that the offense occurred on private property, but offers no explanation as to how or why he makes that assertion in the face of his prior admission to possessing the gun while in the median of an interstate highway. Nothing in the facts of the

-3-

case support this contention and Worley offers no new facts that would undermine the official version of the offense.

Worley's second and larger problem is the legal error that he is making in this case. Defendants often take the view that they are not guilty of possessing a firearm "in or affecting" interstate commerce because they did not personally carry the gun across a state or national border.  In order to be convicted of this offense, all that is required is for the defendant to have possessed a gun that was at some point previously transported in interstate or international commerce.

In *United States v. Sianis*, 275 F.3d 731 (8th Cir. 2002) Sianis made a similar argument concerning a felon in possession charge. Sianis admitted that the firearm had been manufactured in another state but argued that there was insufficient interstate nexus because he had not personally moved the firearm through interstate commerce. In rejecting that argument the Court noted that:

> "Sianis's involvement in how the firearm came into Nebraska is irrelevant to our inquiry. Sianis admits that the firearm at issue was manufactured outside of Nebraska. His admission is enough to satisfy § 922(g)." (Sianis, 275 F.3d 731, 734)

That Congress legitimately has the power under the Commerce Clause to regulate interstate transactions relating to firearms is without doubt. In considering the predecessor statute to 18 U.S.C. § 922(g), the United States Supreme Court discussed the issue of the extent of the nexus to interstate commerce required to validly invoke the Commerce Clause. In discussing the Congress' intent in that regard the Court remarked:

> However, we see no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate

-4-

commerce. *United States v. Scarborough*, 431 U.S. 563, 575 (1977)

It is a simple, common sense, "but for" causation which dictates a policy which requires only a minimal nexus between a firearm and interstate commerce The Eighth Circuit has clearly articulated this rational previously in, *United States v.Shelton*, 66 F.3d 991 (8th Cir. 1995):

> Because Shelton admits that these particular firearms at some point traveled in interstate commerce ...it is evident that his possession of these firearms was dependent upon interstate commerce. Had these firearms not traveled in interstate commerce, they would never have come into Shelton's possession in Missouri. (*Shelton*, 66 F.3d 991, 992)

Worley agreed as a part of the written plea stipulation and agreement in this case that;

> The Rifle was manufactured outside of the state of Missouri and, therefore, traveled in and affected interstate commerce prior to the defendant's possession of the firearms on February 4, 2008. (Plea Stip, p. 11)

This was also made part of the plea colloquy that Worley agreed to during the change of plea proceedings in this case.

> That firearm was test fired and found to function as designed and was manufactured in Russia and, therefore, traveled in and affecting interstate commerce prior to Mr. Worley's possession of it on February 4, 2008. (TRS p. 11)

As pointed out elsewhere, Worley confirmed to the Court the accuracy of these facts during the change of plea proceedings. (TRS p. 11) Given the record herein, the argument that there is no legitimate Federal jurisdiction is simply without merit.  This Court determines that Ground One should be dismissed without the need for an evidentiary hearing.

**B.    Worley Was Correctly Classified as a Career Offender.**

Worley claims that for various reasons none of his three prior qualifying felony drug convictions can be used to classify him as a career offender. (§ 2255 Memo, p. 10) Worley does

not dispute that these are in fact his convictions, and lists them at page 12 of his memorandum:

(1) a January 19, 1993 conviction of sale of a controlled substance.

(2) a February 2, 1998 conviction for conspiracy to manufacture

methamphetamine.

(3) a June 6, 2000 conviction of attempted manufacture of methamphetamine.

Worley has three prior unambiguous felony controlled substance convictions as required by Section 4B1.1(a) to trigger career offender classification. The career offender guideline defines "controlled substance offense" as:

"an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." (U.S.S.G. § 4B1.2(b))

Worley argues that his first qualifying conviction from 1993 should not have been counted as it is more than 15 years old. (§ 2255 Memo, pp. 12-13) While Worley is correct in that felony sentences are generally not to be counted when they are more than 15 years old, he is either ignoring, or unaware of the exception to this rule. Application Note 1 to Section 4A1.1 provides that a sentence imposed more than fifteen years prior to the defendant's commission of the instant offense are not to be counted "unless the defendant's incarceration extended into this fifteen year period." Although Worley was convicted of that offense on February 17, 1993, as a result of his repeated failures on probation and parole he was re-incarcerated on that charge as late as 2000, well within the fifteen year period. (PSR ¶ 39)

Worley then makes the argument that his conviction for the inchoate drug offenses, conspiracy to manufacture methamphetamine in 1998 and attempting to manufacture

-6-

methamphetamine in 2000 do not count as the "statute criminalizes conduct that does not constitute a controlled substance offense under the guidelines." (§ 2255 Memo, p. 13) This argument is also without merit. Application Note 1 to Section 4B1.2 specifically provides that for the purposes of the career offender guideline, the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."

**C.   Worley Was Mistakenly Classified as an Armed Career Criminal.**

A careful review of the record indicates that Worley was improperly classified as an armed career criminal. For unknown reasons, neither the U.S. Probation Office, The attorneys for the parties nor this Court was aware of this error at the time of sentencing.

For purposes of treatment as an armed career criminal under Section 4B1.4, Worley's predicate offenses must meet the criteria for a "serious drug offense" which is, for this purpose, defined as "an offense under state law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance...for which a maximum term of imprisonment of ten years or more is prescribed by law." (18 U.S.C. § 924(e)(2)(A)(ii)) Clearly all three of Worley's three predicate offenses involved "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance". None of the three prior convictions however meet the second requirement, in that they are not crimes "for which a maximum term of imprisonment of ten years or more is prescribed by law."

An examination of the records of conviction for the three Missouri drug offenses used to enhance Worley's sentence reveals that they are all class "C" felonies. Under Missouri law a class "C" felony is punishable by a term of imprisonment not to exceed seven years. (Missouri

Revised Statutes § 558.011.1(3)) As none of Worley's offenses were actually qualifying priors, he was incorrectly classified as an armed career criminal and mistakenly sentenced under the assumption that the 180 month mandatory minimum sentence applied.

Had Worley been correctly categorized as only a career offender, but not as an armed career criminal his advisory guidelines range would have been 151 to 188 months, and there would not have been any mandatory minimum sentence. Although Worley still received a sentence within the correct advisory guidelines range (180 months), given this Court's incorrect understanding that he was subject to the mandatory minimum sentence, a lesser sentence was not considered. Worley was prejudiced in that respect.

## CONCLUSION

Worley's claims that 18 U.S.C. § 922(g)(1) is unconstitutional and that he was not correctly classified as a career offender are totally without merit. These claims are dismissed without the need of further proceedings.

Worley is correct in his allegation that he was improperly classified as an armed career criminal. It also appears from the record that he might have received a different sentence had this Court been aware of the error at the time of sentencing. Under these circumstances, a new sentencing hearing is set for **Monday, December 19, 2011 at 3:00 p.m.** in Courtroom 4B at the Rush Hudson Limbaugh, Sr. United States Courthouse in Cape Girardeau, Missouri.

**SO ORDERED** this 14th day of November, 2011.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

-8-